UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINA W.,

                                          Plaintiff,

v.                                                                                       5:23-cv-0839
                                                                                       (AMN/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ        PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION        FERGUS J. KAISER, ESQ.
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**REPORT-RECOMMENDATION**

**I.    INTRODUCTION**

       Tina W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Dkt. No. 1. Plaintiff did not consent to the jurisdiction of a Magistrate Judge. Dkt. No. 5. The matter was referred to the undersigned for a report and

recommendation by the Hon. Anne M. Nardacci, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18. Dkt. Nos. 13, 15. For the reasons set forth below, the Court recommends Plaintiff's motion for judgment on the pleadings be denied, Defendant's motion be granted, and the decision of the Commissioner be affirmed.

## II. BACKGROUND

Plaintiff was born on October 10, 1972, was 46 years old at her alleged onset date of disability, and 47 years old at the time of her application for benefits. *See* T. 110-11.[1] She has a GED and some college education, and previously worked as a restaurant manager, store sales attendant, and small business owner. *See id*. at 49-58.

On July 2, 2020, Plaintiff protectively filed an application for social security benefits. *Id*. at 111. She alleged disability beginning on January 1, 2019, due to: anxiety, major depressive disorder, PTDS, COPD, carpal tunnel in the right hand, neck injury, back injury, sciatic nerve pain, IBS, GERD, and migraines. *Id*. Her applications were initially denied on January 8, 2021, *id*. at 211, and again upon reconsideration on October 1, 2021, *id*. at 235.

Plaintiff requested a hearing before an Administrative Law Judge. *Id*. at 249-50. On May 23, 2022, she appeared before ALJ Kenneth Theurer via videoconference. *See id*. at 39-85. On June 3, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act ("SSA") prior to May 24, 2022, but became disabled on that date. *Id*. at 24.

---

[1] The Administrative Record/Transcript is found at Dkt. Nos. 8-9. Citations to the Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Citations to the parties' submissions will use page numbers assigned by CM/ECF, the Court's electronic filing system.

The ALJ's decision became the final decision of the Commissioner when the Appeals Counsel denied Plaintiff's request for review on May 23, 2023. *Id*. at 1. Plaintiff timely commenced this action July 13, 2023. *See* Dkt. No. 1.

### III. LEGAL STANDARDS

#### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision.  *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996).  Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his reasonings.  *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

### B. Standard for Benefits [2]

To be considered disabled, a plaintiff seeking disability benefits must establish she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Additionally, the claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, therefore, "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess*, 537 F.3d at 120; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). The claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id*.

## IV.  THE ALJ'S DECISION

The ALJ applied the five step sequential evaluation process promulgated by the Commissioner for adjudicating disability claims. *See generally*, T. 11-24. At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023, and had not engaged in substantial gainful activity since the alleged onset date, January 1, 2019. *Id*. at 14. Proceeding to step two, the ALJ determined Plaintiff "had the following severe impairments: degenerative disk disease of the lumbar spine, degenerative disc disease of the cervical spine, sciatica, asthma, COPD, migraines, anxiety disorder, depressive disorder, PTSD, and borderline personality." *Id*.

At step three, the ALJ found, since January 1, 2019, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*. The ALJ next determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with certain additional limitations, specifically:

> [Plaintiff] is able to occasionally lift and carry ten pounds, sit for approximately six hours, stand or walk for approximately two hours in [an] eight-hour day with normal breaks. She can occasionally climb ramps or stairs but should never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to smoke, dust, and respiratory irritants, and work at unprotected heights or in conjunction with dangerous machinery. The claimant's work is

6

> limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements as would be experienced on an assembly line; involving only simple, work-related decisions; with few, if any, workplace changes. After the initial training period, the claimant should have no more than occasional contact with supervisors. The claimant should also have no more than occasional contact with coworkers and the public.

*Id*. at 16. At step four, the ALJ found, since the alleged onset date, Plaintiff had not been able to perform any past relevant work. *Id*. at 21.

At step five, the ALJ determined a borderline age situation existed. *Id*. at 22. Prior to Plaintiff's disability onset date, she was a younger individual, age 45-49, however, on May 24, 2022, Plaintiff's "age category changed to an individual closely approaching advanced age." *Id*. Therefore, prior to May 24, 2022, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could have performed, however, "[b]eginning on May 24, 2022," the date Plaintiff's age category changed, there were no jobs existing in significant numbers in the national economy that she could perform. *Id*. at 22-24. Accordingly, Plaintiff "was not disabled prior to May 24, 2022[,] but became disabled on that date," and her disability was "expected to last twelve months past the onset date." *Id*. at 24.

## V. DISCUSSION

Plaintiff argues the ALJ failed to properly assess the medical evidence, specifically, opinion evidence from treating sources indicating Plaintiff was disabled before May 24, 2022, and the ALJ failed to properly assess the consistency of Plaintiff's own statements concerning her symptoms with the objective medical evidence and other evidence of record. Dkt. No. 13 at 10, 18. Defendant contends the ALJ properly assessed the medical evidence and Plaintiff's subjective complaints. Dkt. No. 15 at 8, 18.

### A. The ALJ Properly Assessed Opinion Evidence from Treating Sources

Plaintiff first avers the ALJ failed to properly assess the opinion evidence from her treating sources supporting the contention that she was disabled before May 24, 2022. Dkt. No. 13 at 10. Regarding the opinions completed by PA Gaskill, the ALJ observed:

> PA Nancy Gaskill has a treatment relationship with the claimant; however, her two opinions are not consistent with the overall record and therefore less persuasive . . . . The assessments are not support[ed] with an explanation or ties to clinical findings. PA Gaskill opined that the claimant can only sit for one hour and stand and/or walk for one hour in an eight-hour work day and cannot perform any postural activities, which indicates that the claimant would be bed ridden for most of the day. The record indicates that the claimant lives independently and performs her own activities of daily living and is not bedridden. Additionally, the claimant's treatment is consistent but not at the frequency that would support more than four days off per month. The record does not indicate that the claimant was distracted enough to not be able to follow and advocate for herself at her medical visits. Therefore, the off task assessment and absentee assessment are not supported by the record.

T. 20 (citations omitted). With respect to the opinion submitted by PA Gemeli, the ALJ noted:

> The opinion from the claimant's treatment provider Amy Gemeli, PA is less persuasive . . . . Despite the treatment relationship, the opinion is not consistent with objective evidence or supported with an explanation. The overall record support[s] a sedentary exertional level but the off task and absences are speculative and not tied to objective evidence. As discussed above, the claimant's treatment and her ability to focus at her medical visits do not support these assessments.

*Id*. (citations omitted). Finally, concerning the opinion of NPP Frank, the ALJ concluded:

> NPP Brian Frank has a treatment relationship with the claimant, but his opinion is not supported by an explanation and not entirely consistent with the objective evidence in the record and therefore less persuasive . . . . The overall record supports some moderate limitations, including the moderate limitations in this opinion. However, the overall record does not support marked limitations. Additionally, the overall record does not support the off-task assessment nor the absenteeism assessment. The claimant has consistent treatment, but the record does not indicate that it would

> result in that many days absent per month. The record also noted the claimant as having a consistent unhappy mood and reported feelings of worthlessness and hopelessness, but she was still able to live independently, perform her own activities of daily living, and take care of her 18-year-old son. This does not support the off task and number of absent assessments.

*Id*. at 21 (citations omitted).

For claims filed on or after March 27, 2017, such as this one, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from" a claimant's own "medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior finding. *Id*. §§ 404.1520c(a)-(c), 416.920c(a)-(c). "[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution . . . ." *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (Summary Order) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)) (additional citation omitted).

Plaintiff first contests the ALJ's statement that "PA Gaskill opined that the claimant can only sit for one hour and stand and/or walk for one hour in an eight-hour work day and cannot perform any postural activities, *which indicates that the claimant would be bed ridden for most of the day*." T. 20 (emphasis added); *see* Dkt. No. 13 at 11. She argues this "exaggerated characterization" of Gaskill's opinion "is inappropriate and inaccurate" and "belies an inaccurate assessment of" the medical evidence. Dkt. No. 13 at 11-12. The undersigned is unpersuaded.

Viewed in context, the ALJ's use of the term "bed ridden" to describe Gaskill's opinion on Plaintiff's limitations demonstrated the contrast between Gaskill's opinion and the overall record, including Plaintiff's activities of daily living. *See* T. 20. For example, in both the June, 2020, and March, 2022, checkbox opinion forms, Gaskill indicated Plaintiff could only stand or walk without leaning or use of a supportive device for "10 minutes or less" at a time, for a total of "1 hour or less" in an eight hour day. *See id*. at 978-79, 2021-22. In June of 2020, Gaskill found Plaintiff could sit in an upright position for "20 minutes or less at one time," *id*. at 978, in March of 2022, the PA indicated Plaintiff could do so for "10 minutes or less at one time," *id*. at 2021, and on both occasions, opined she could spend "1 hour or less" total in an eight hour day sitting, *id*. at 978, 2121.

By contrast, consultative examiner Dr. Jenouri opined only "[m]oderate restriction[s] with walking and standing long periods" and included no limitations with sitting. *Id*. at 1385; *see also*, *e.g.*, *Jordan v. Comm'r of Soc. Sec.*, No. 1:16-CV-9634, 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018) (explaining, "a number of courts have found that 'moderate' limitations for standing, walking, sitting, and lifting are consistent with the ability to do light work.") (collecting cases). The consultive examiner observed, during the December, 2020, examination, Plaintiff "appeared to be in no acute distress," her stance was "normal," she "[u]sed no assistive devices," did not need "help changing for exam or getting on and off the exam table," and was "[a]ble to rise from chair without difficulty." T. 1383. Dr. Jenouri also noted no sensory deficit and rated Plaintiff's strength as "5/5 in the upper and lower extremities." *Id*. at 1384. Additionally, Plaintiff reported to psychiatric consultative examiner Dr. Long that her hobbies included watching "TV, radio, reading, and meditation," *id*. 1391, activities involving sitting. *See Kevin M. v. Kijakazi*, No. 6:20-CV-6802, 2022 WL 2704527, at *3 (W.D.N.Y. July

10

12, 2022) ("the supportability of an RFC finding of sedentary work, despite moderate limitations in prolonged sitting, is particularly strong where, as here, the record also includes evidence that plaintiff is able to perform activities of daily living that involve some . . . sitting.") (internal quotations omitted) (citing *Rosa v. Comm'r of Soc. Sec.*, No. 1:19-CV-1433, 2022 WL 2274720, at *10 (E.D.N.Y. June 23, 2022)); *Hammond v. Colvin*, No. 1:12-CV-0965 (TJM/VEB), 2013 WL 4542701, at *5-6 (N.D.N.Y. Aug. 26, 2013) (explaining the plaintiff's "activities of daily living, which included car rides and other activities . . . involving prolonged sitting, provides further support for the ALJ's determination" that the plaintiff could "sit for 45 minute intervals" and "perform the full range of sedentary work."). Therefore, the Court can glean the ALJ's reasoning in discrediting PA Gaskill's opinion which contained comparatively greater restrictions.

Plaintiff next appears to argue the ALJ failed to adequately assess the supportability and consistency of her treating source's opinions. *See* Dkt. No. 13 at 12 ("An ALJ is required to specifically set forth how she considered the supportability and consistency factors and failure to do so is legal error."). She states "the ALJ's analysis of the treating sources' opinions completely lacks any reference to other medical sources and nonmedical sources in the claim." *Id*. at 14 (internal quotations and citation omitted). This argument is belied by the ALJ's decision.

Concerning the "supportability" factor, the regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," the regulations state "[t]he more consistent a medical opinion(s) . . . is

11

with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2). Further, an "ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis." *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD/ML), 2023 WL 3004780, at *4 n.1 (N.D.N.Y. Jan. 5, 2023); *see also*, *e.g.*, *Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4-5 (N.D.N.Y. Dec. 13, 2023) (concluding the ALJ's assessment of the supportability and consistency factors was sufficient where the ALJ "did not use the words supportability and consistency when analyzing each of the medical opinions, but she explained whether and to what extent the medical opinions were supported by or consistent with other evidence.").

     Here, the ALJ found PA Gaskill's opinions were "not consistent with the overall record" and "not support[ed] with an explanation or ties to clinical findings." T. 20. Put another way, Gaskill's opinions lacked "objective medical evidence and supporting explanations . . ." or *supportability* and were not "consistent . . . with the evidence from other medical sources and nonmedical sources . . ." or, in other words, *consistency*. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ similarly observed PA Gemeli's opinion was "not consistent with objective evidence or supported with an explanation." T. 20. Finally, the ALJ concluded NPP Frank's opinion was "not supported by an explanation and not entirely consistent with the objective evidence in the record . . . ." *Id*. at 21. Therefore, contrary to Plaintiff's assertion, the ALJ did set forth how she considered the supportability and consistency of her treating provider's opinions.

To the extent Plaintiff contends the ALJ's consistency analyses are unsupported because the ALJ did not adequately consider the overall record of Plaintiff's impairments throughout the relevant period, the Court disagrees. The ALJ's thorough narrative detailed Plaintiff's symptoms and treatment of her physical and mental impairments. *See id*. at 18-19.

For example, while Plaintiff described lower back pain in October, 2019, which was aggravated by lifting, standing, bending, sitting, and walking, progress notes from CNY Spine and Pain Medicine document normal gait and posture. *See id*. at 1216-18. While the examination also revealed positive trigger points, muscle spasms, tenderness, and limited flexion and extension of the lumbar spine, *see id*. at 1218, the ALJ explicitly acknowledged such findings in his decision which limited Plaintiff to a range of sedentary work, *see id*. at 19. Further, the lumbar spine x-ray ordered by PA Gaskill the same month was negative. *See id*. at 666. Plaintiff's x-ray displayed "normal alignment," "well maintained" cerebral bodies and disc spaces, and "unremarkable" SI joints. *Id*. Moreover, treatment records documenting Plaintiff's unimpaired concentration and thought process undermine NPP Frank's indication Plaintiff would be off-task at least 50% of the time. *See, e.g.*, *id*. at 1274-75 (June, 2020, concentration/focus within normal limits, thought process linear, cognition intact, insight and judgment fair), 1206 (July, 2020, Plaintiff's thought process linear, cognition intact, insight and judgment fair), 1252-53 (August, 2020, concentration/focus within normal limits, thought process linear, insight and judgment fair). Plaintiff also testified her mental impairments had never required hospitalization, *see id*. at 60, and that she was responsible for arranging her son's appointments, transportation to school and tutoring, and provided care during his recovery from a major surgery, *see id*. at 67-68.

Plaintiff also appears to contest the ALJ's failure to adopt the treating sources' opinions regarding off task and absenteeism. *See* Dkt. No. 13 at 14-15, 17. However, Plaintiff has not

13

pointed to evidence supporting the opined limitations, beyond the sources' check box opinions. As Defendant points out, Plaintiff's attempt to shift the burden to the Commissioner is misguided. "[I]t is the plaintiff's burden to prove that [s]he should have a more restrictive RFC than the one assessed by the ALJ." *Celia A. B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0112 (CFH), 2022 WL 4225540, at *12 (N.D.N.Y. Sept. 13, 2022) (citing *Petrusiello v. Comm'r of Soc. Sec.*, No. 2:18-CV-6553, 2021 WL 1238713, at *8 (E.D.N.Y. Mar. 31, 2021)); *see also*, *e.g.*, *Carol C. v. Comm'r of Soc. Sec.*, No. 8:21-CV-0862 (TWD), 2023 WL 2664430, at *10 (N.D.N.Y. Mar. 28, 2023).

Here, the ALJ's RFC determination was highly restrictive, limiting Plaintiff to sedentary work with additional exertional, non exertional, postural, and manipulative limitations. *See* T. 16. "An RFC for less than a full range of sedentary work reflects very serious limitations . . . and is expected to be relatively rare." SSR 96-9P (S.S.A. July 2, 1996). Furthermore, an RFC finding of sedentary work with the additional limitations prescribed here encompasses some of the treating sources more restrictive opinions. *See*, *e.g.*, *Rama v. Acting Comm'r of Soc. Sec.*, No. 1:22-CV-6928, 2023 WL 8379265, at *18 (S.D.N.Y. Dec. 5, 2023) (explaining, the ALJ "properly evaluated the potential for [the claimant]'s time off-task and absenteeism in determining an RFC limiting [him] to performing unskilled work consisting of 'simple, repetitive, and routine and non-complex tasks.'") (citing *Lowry v. Comm'r of Soc. Sec.*, No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4-5 (N.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017)).

Finally, in support of Plaintiff's claim that her impairments are disabling, she references a volume of her reports of pain and tenderness. *See* Dkt. No. 13 at 15-16. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe,

by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). As discussed in greater detail below, the ALJ did not err in assessing Plaintiff's statements concerning pain caused by her impairments.

In sum, the ALJ acknowledged each of the treating sources' relationship with Plaintiff, however, he was entitled to rely upon the opinions of non-treating sources. *See*, *e.g.*, *Cheryl A. L. v. Comm'r of Soc. Sec. Admin.*, No. 5:23-CV-0151 (AMN/TWD), 2024 WL 1073442, at *11 (N.D.N.Y. Feb. 5, 2024) ("An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.") (quoting *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)), *report and recommendation adopted*, 2024 WL 862163 (N.D.N.Y. Feb. 29, 2024). "Thus, the ALJ's evaluation of the medical record does not amount to a mischaracterization requiring remand and the Court will not reweigh the evidence." *Lorraine Michele H. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0013 (MAD/TWD), 2022 WL 7285345, at *9 (N.D.N.Y. Sept. 13, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 4545541 (N.D.N.Y. Sept. 29, 2022).

### B. The ALJ Properly Assessed Plaintiff's Statements

Plaintiff further contends the ALJ "failed to properly assess the consistency of the Plaintiff's allegations of symptoms and limitations." Dkt. No. 13 at 18. With respect to Plaintiff's own statements concerning her symptoms, the ALJ found her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not fully supported for the reasons explained in this decision." T. 17-18.

15

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ." 42 U.S.C. § 423(d)(5)(A); *see also Mauro v. Comm'r of Soc. Sec. Admin.*, 746 F. Appx 83, 84 (2d Cir. 2019) (Summary Order) (explaining, "subjective complaints alone are not a basis for an award of disability insurance benefits in the absence of corroborating objective medical evidence.") (citing 20 C.F.R. § 404.1529; *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009)). Instead,

> there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability.

*Id*. § 423(d)(5)(A); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (explaining, an "ALJ is required to take the claimant's reports of pain and other limitations into account . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (citing 20 C.F.R. § 416.929; *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)) (additional citation omitted).

Plaintiff argues the ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of" her alleged symptoms were "not fully supported," T. 17-18, was improper. *See* Dkt. No. 13 at 19. More specifically, she avers "[n]owhere in the regulations in general, or in 20 C.F.R. 404.1529 in particular, is it required that a plaintiff's allegations regarding symptoms be 'fully supported'. This is a misapplication of the law, and an unreasonable burden." *Id*. This contention is meritless.

As the Commissioner has identified, *see* Dkt. No. 15 at 19-20, the regulations not only permit but compel an ALJ to consider the extent to which a claimant's symptoms, such as pain, are consistent with the objective medical and other evidence. *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, *and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.*") (emphasis added); 20 C.F.R. § 416.929(a) (same); *see also*, *e.g.*, *Zell v. Comm'r of Soc. Sec.*, No. 1:18-CV-0197, 2019 WL 5387454, at *4 (W.D.N.Y. Oct. 22, 2019) ("The regulations on their face allow for an assessment of consistency between statements of pain and other symptoms and the objective medical evidence . . . . the ALJ had discretion to find that plaintiff's statements and the objective medical evidence did not match.") (citing 20 C.F.R. §§ 404.1529(a), 416.929(a); *Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (Summary Order)).

Furthermore, courts in this circuit have consistently affirmed ALJ's determinations utilizing the "not fully supported" verbiage Plaintiff opposes. *See*, *e.g.*, *Montaque v. Astrue*, No. 5:07-CV-0749 (VEB), 2010 WL 1186515, at *10-11 (N.D.N.Y. Mar. 23, 2010) (concluding "the ALJ properly considered Plaintiff's symptoms, complaints of pain, and reported limitations, along with the medical and other evidence in the record" where the ALJ found the plaintiff's "underlying medical impairments could reasonably be expected to produce some of the symptoms claimed, but that *his statements concerning the intensity, persistence, and limiting effects of his reported symptoms are not entirely credible as Plaintiff's claims are not fully supported by objective medical evidence . . . .*") (emphasis added); *D'Aquino v. Comm'r of Soc. Sec.*, No. 1:20-CV-3947, 2022 WL 10568161, at *3, 6 (E.D.N.Y. Oct. 18, 2022) (finding "the ALJ properly chose to resolve the inconsistencies between the medical opinions and Plaintiff's

17

testimony" where "the ALJ reasoned that although Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, *her subjective statements about the intensity, persistence, and limiting effects of these symptoms were not fully supported by the record*.") (emphasis added) (citing *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (Summary Order) ("[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record . . . .")); *Boland v. Comm'r of Soc. Sec.*, No. 1:20-CV-7312, 2022 WL 977066, at *7 (S.D.N.Y. Mar. 1, 2022) (finding the ALJ's RFC determination was supported by substantial evidence where, "[i]n the course of determining plaintiff's RFC, the ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; 'however, *his statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported by the preponderance of the evidence of record*.'") (emphasis added), *report and recommendation adopted*, 2022 WL 973504 (S.D.N.Y. Mar. 31, 2022).

Here, the ALJ's decision demonstrates a comparison between Plaintiff's own statements concerning her physical and mental impairments and the record evidence. For example, with respect to Plaintiff's physical impairments, the ALJ noted Plaintiff testified:

> she cannot work because she feels she would pass out and she gets dizzy walking . . . . she has heart pains, pinching, numbness, and her hands and feet cramp up . . . . She can only turn her head at certain times and only a little bit . . . . Three to four times a day and fourteen to fifteen times a month she gets migraines . . . . Despite taking medication for her migraines, they still cause her to vomit . . . . Sometimes, due to her COPD, she is unable to breath[e] . . . . Once or twice a week her hands go numb and if she reaches over her head, she gets dizzy . . . . She has arthritis in her neck and back and said that she is able to stand for about fifteen to twenty minutes.

T. 17 (citing Plaintiff's hearing testimony). However, as the ALJ observed, Plaintiff's "2019 cervical spine x-ray showed no acute fracture or dislocation and straightening of the cervical

18

lordotic curvature" and a "2019 lumbar spine x-ray was negative." *Id*. at 18-19 (citing T. 665-66). At the December, 2020, internal medicine consultative examination, Plaintiff's "stance was normal, her gait was antalgic, . . . she was not using an assistive device" and she was able to walk "on heels and toes with difficulty and perform[] half of a full squat." *Id*. at 19 (citing T. 1383). The examiner found her "joints were stable and nontender with no redness, heat, swelling, or effusion," noted "[n]o sensory deficit . . . she had full strength in her upper and lower extremities," Plaintiff's "hand and finger dexterity were intact . . . she had full grip strength," and "cervical and lumbar spine x-rays were negative." *Id*. (citing T. 1384, 1386-87). A January, 2021, test found "Normal Pulmonary Function," lung volumes, and diffusing capacity. *Id*. at 1846. Finally, the ALJ noted a "normal" MRI and CT of Plaintiff's brain, *id*. at 19 (citing T. 1092), as well as her use of Topamax, Sumatriptan, and "Aimovig" which "almost completely resolved her headaches," *id*. at 19 (citing T. 552).

In sum, the ALJ did not err in finding Plaintiff's own statements concerning her impairments and the symptoms thereof were "not fully supported" by the record evidence. Accordingly, remand of the matter is not warranted.

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**; and it is further

**RECOMMENDED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  July 31, 2024
       Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge